1:06-cv-01073-MMM-JAG  # 19  Page 1 of 7

E-FILED
Tuesday, 22 August, 2006 04:29:12 PM
Clerk, U.S. District Court, ILCD

AUG 18 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
06-1073

RECEIVED
JUN 29 2006
SUPREME COURT
CLERK

*City of Rockford v. Henry Compton.*

1. BILL OF EXCEPTIONS—*when, not essential to review.* Where the face of the record shows the ground upon which the court entered the particular judgment, no bill of exceptions is necessary to authorize a review. (So held by inference.)

2. INFERIOR TRIBUNAL—*how far action of, reviewed.* Where the record of an inferior tribunal is brought before the Circuit Court by common-law writ of certiorari, the only question before the court is the validity and sufficiency of the record certified to by that tribunal, but where such a record is sent up by virtue of an appeal allowed by statute, full review should be made.

3. "APPEAL"—*what embraced within.* While the word "appeal" has a strict, technical definition, yet it is frequently used as embracing all kinds of proceedings for the review of causes.

4. TRIAL DE NOVO—*when, proper upon appeal to Circuit Court.* Notwithstanding the statute does not specifically so provide. An appeal from the action of a board of police and fire commissioners removing a patrolman, should be determined, not upon a transcript of the proceedings transmitted by such board, but upon a hearing de novo.

5. REMOVALS—*power of police and fire commissioners to make.* Removals can only be made by such board for cause and then only when written charges have been filed, a hearing granted, investigation had and evidence heard.

6. CIVIL SERVICE EMPLOYEE—*what deemed sufficient cause for removal of.* A charge either to put a civil service officer upon trial or to justify his removal must specify some dereliction or neglect of duty, or incapacity to perform the same, or some delinquency affecting his general character and fitness for the office.

7. CIVIL SERVICE EMPLOYEE—*how charges against, must be averred.* Charges against a civil service employee to authorize his trial or removal should be specifically stated with sufficient certainty, though the technical nicety required in indictments is not necessary.

8. APPELLATE COURT—*when jurisdiction to review not ousted.* An appellant does not oust the Appellate Court of jurisdiction to review a judgment by assigning an error which raises a constitutional question where no such question was raised in the trial court or preserved for review.

Appeal from action of fire and police commissioners in removing patrolman. Appeal from the Circuit Court of Winnebago County; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

C. W. FERGUSON and L. M. RECKHOW, for appellant.

R. G. McEVOY, for appellee.

Mr. JUSTICE DIBELL delivered the opinion of the court.

An act entitled "An Act to provide for the appointment of a board of fire and police commissioners in all cities of this state having a population of not less than seven thousand nor more than one hundred thousand, and prescribing the powers and duties of such board," in force April 2, 1903, provides for the adoption of said act by the electors of any city of this state, the population of which is within the limits stated in the title, and for the appointment, in a city adopting it, of a board of fire and police commissioners, consisting of three members, which board is to appoint all officers and members of the fire and police departments of the city, after first examining all applicants as to their capacity to discharge the duties of the position to which they seek to be appointed. Said board is to make rules for appointments, promotions and removals, and has power to change such rules.

Sections 12 and 18 of said act are as follows:

Sec. 12. No officer or member of the fire or police department of any such city, who shall have been such for more than one year prior to the passage of this act, or who shall have been appointed under the rules and examination provided for by this act, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense. Such charges shall be investigated by such board of fire and police commissioners, and in case such officer or member be found guilty such board may remove or discharge him, or may suspend him not exceeding ten days without pay. Such board of fire and police commissioners may suspend any officer, pending such investigation, but not to exceed thirty days at any one time. In the conduct of such investigation each member of said board shall have power to administer oaths and affirmations, and said board shall have power to secure by subpoena both the attendance and testimony of witnesses and the production of books and papers relevant to such investigation.

Sec. 18. An appeal may be taken from an order of such board by any person interested or affected thereby, to the circuit court of the county in which said city may be located,

[Handwritten annotations in margin: "Several individuals in court room", "Personal Notes (JAG)", "deprive of the right", "Such as motions to reconsider or vacate found by the court", "so its possible to not have any notice of the motion"]

by such person filing with the secretary of said board a bond with sufficient surety in the sum of one hundred dollars, conditioned that he will pay the costs of such appeal in case they should be adjudged against him, and by paying to said secretary the necessary fee for entering such appeal in such circuit court within ten days after the entry of such order. The secretary shall forthwith transmit to the circuit court a complete transcript of all matters and proceedings concerning the order appealed from, and the docket fee so deposited."

The board of fire and police commissioners of the city of Rockford, acting under said statute, filed in the court below a transcript showing proceedings before it resulting in an order by said board finding charges preferred by Mrs. C. B. Lyons against patrolman Henry Compton sustained, and removing him from that office, and in an appeal by Compton to the Circuit Court perfected in compliance with said statute. The case was erroneously docketed in the Circuit Court as if Compton were the plaintiff, whereas the proceeding is against him. The city moved to dismiss Compton's appeal, and the clerk has copied into the record a written motion by the city which asserts that the law does not provide for trials *de novo* in such cases, and that as Compton had not preserved a copy of the evidence heard by the board there was nothing for the Circuit Court to review. This motion was denied. The cause came on for hearing and the court reversed the order appealed from and adjudged all proceedings thereunder null and void. This is an appeal by the city from that judgment.

We take it this is a proceeding on the law side of the court, and such is the city's contention here. It is the usual rule that exceptions to the action of the court are essential to a review of the judgment, and that such exceptions must be preserved by a bill of exceptions, and cannot be preserved by any recitals in the record kept by the clerk. The trial judge seems to have signed the judgment order, but that was merely in approval of its form. The fact that the judge signed that order does not turn it into a bill of exceptions. The city did not ask or obtain leave to file a bill of exceptions, and it has not filed such a bill. In the

absence of any exception to the finding or the judgment of the court, preserved by a bill of exceptions, the legal presumptions are in favor of the regularity and propriety of the judgment. That in all ordinary cases such a record presents no question for review has been held in many cases, some of which are cited and considered in the late cases of City of Alton v. Foster, 207 Ill. 150; Jones v. Village of Milford, 208 Ill. 621; and Hawley v. Huth, 114 Ill. App. 29.

But the judgment in this case states the ground upon which the court acted. It reads as follows, after the title of the cause:

"And now on this day comes the said appellant, Henry Compton, by R. G. McEvoy, his attorney; comes also the said appellee, City of Rockford, by L. M. Reckhow and Charles W. Ferguson, its attorneys. And this cause coming on to be heard on appeal from the order of the board of fire and police commissioners of the city of Rockford, upon the transcript of matters and proceedings before said board, upon consideration thereof, it is ordered that the said order of said board of fire and police commissioners be, null and void, there being no sufficient evidence preserved in the said transcript to sustain the same."

Counsel for both parties appear to agree that the evidence heard by the board should have been embodied in the transcript, and that the only function of the Circuit Court was to review that record, their dispute being whether Compton or the city was required to cause the evidence heard by the board to be preserved in its transcript and transmitted to the Circuit Court. The city argues that as Compton did not preserve that evidence there was nothing to show the Circuit Court that the order of removal was unfounded, and therefore it should have been affirmed. Compton argues that it was the duty of the board to preserve the evidence and to embody it in the transcript sent up upon his appeal, and as the transcript the board sent up does not contain the evidence, there was nothing in the transcript to support the order of removal, and therefore it

was properly reversed. The statement at the close of the judgment above quoted (if such statement was properly inserted by the clerk) shows that the trial judge decided it was his province to sit only in review of the record transmitted by the board, and that he held the board should have preserved and sent up the evidence upon which it acted, and that in default thereof there was nothing to support the order and it must fall. While the general rule is as above stated, that a bill of exceptions is essential to a review of the judgment ____ ____ ____ ____ ____ of the ____ suit Court in an action at law, yet there are cases where ____ there is one exception to the rule. In Randolph v. Emerick, 13 Ill. 345, it was held that where the face of the record showed the grounds upon which the court entered the judgment, which in that case was that the court dismissed the suit on defendant's motion because no bond for costs had been filed by plaintiff, in such case no bill of exceptions was necessary to authorize the Supreme Court to review such action. In Wiggins Ferry Co. v. People, ex rel, 101 Ill. 446, it was held that where an error appears in the record proper as made up by the clerk, no exception to the judgment of the court is necessary in order that such error may be assigned upon it. To the same effect are People, ex rel., v. Dragstran, 100 Ill. 286, and McChesney v. City of Chicago, 151 Ill. 307. That principle was recognized in People, ex rel., v. C. & N. W. Ry. Co., 200 Ill. 289. In Alley v. McCabe, 147 Ill. 410, it was held that the question whether the Circuit Court on appeal from a justice of the peace could enter a judgment for more than $200 was presented without a bill of exceptions; because the facts upon which that error was assigned appeared from the record proper as made up by the clerk. In Offield v. Siler, 15 Ill. App. 308, this court held that where the record showed that the defendant moved to dismiss the suit for want of jurisdiction and that the court sustained the motion and dismissed the suit for want of jurisdiction, an assignment that the court erred in so dismissing the suit was properly presented for decision without a bill of exceptions. In Norton v. Coggswell, 35 Ill.

App. 566,' where the court called a case for trial and dismissed the appeal therein from a justice when no transcript had been filed, and no summons had been issued nor appearance entered by the party not appealing; it was held the error in dismissing the appeal was shown by the record and needed no bill of exceptions to present it. In Radeke Brewing Co. v. Granger, 101 Ill. App. 599, this court held that where the record showed the garnishee was discharged upon his answer, the correctness of that ruling was presented without a bill of exceptions. While we do not decide that the recital in the clerk's record that the court reversed the order of the board because there was no sufficient evidence preserved in the transcript to sustain said order, presents the correctness of such ruling for our decision, yet in view of the doubt on that question raised by the foregoing authorities, and in view of the further fact that counsel for both parties have treated the case as if the merits were presented, we proceed to a consideration of the correctness of the judgment of the court below. Where the record of an inferior tribunal is brought before the Circuit Court by a common-law writ of certiorari, the only question before the court is the validity and sufficiency of the record certified up by that tribunal. But the record before us is not a record sent up in obedience to a common-law writ of certiorari, but it is a transcript sent up upon an appeal allowed by statute. The term "appeal," in its original, technical and appropriate sense, meant the removal of a suit from an inferior court, after final judgment therein, to a superior court, and placing the case in the latter court to be again tried *de novo* upon its merits, just as though it had never been tried in the inferior court. Thus, it was said by the Supreme Court of the United States in United States v. Goodwin, 7 Cranch, 108: "An appeal is a civil law process, and removes a cause entirely, subjecting the law and fact to a review and a retrial." While this is the technical definition it has not always been observed in modern times; but the term "appeal" is often used as embracing all kinds of proceedings for the review of cases.

Bouvier's and Anderson's Law Dictionaries, title "Appeal;" 2 Am. and Eng. Ency. of Law, 2nd Ed., 425. Hence it is that the mere use of the word "appeal" in a statute furnishes no certain guide to its precise meaning and effect, but to determine its operation, resort must be had to the general policy of the law, and to reasons drawn from analogy and from the practical consequences of applying one pretation or another. 2 Ency. of Pl. & Pr. 324.

In this state the Circuit Court is the general court for the trial of causes by the production and examination of witnesses in open court, either with or without a jury. The constitution authorizes it to exercise such appellate jurisdiction as is or may be provided by law, but that jurisdiction has almost universally been exercised by it by a trial *de novo*. Appeals from justices of the peace to the Circuit Court are uniformly so tried. Sections 25, 36 and 37 of chapter 34 of the Revised Statutes, relating to counties, provide for an appeal to the Circuit Court from an order of the county board disallowing in whole or in part a claim against a county. So far as we are advised, such appeals have always been tried *de novo* in the Circuit Court, though the statute does not expressly say they shall be so tried. Several such cases have been reviewed by the Supreme and Appellate Courts without any suggestion that such retrial was unauthorized. There are other statutes which provide an appeal to the Circuit Court from inferior tribunals other than courts, and we are not advised that such appeals have resulted merely in a review by the Circuit Court of the record of the lower tribunal. There have been statutes which restricted the power of the Circuit Court upon appeal to a mere review of the record of the court from which the appeal came. Such was the provision of section 4 of the act of January 2, 1829, relating to Courts of Probate (Rev. Laws of 1833, p. 146), and also section 134 of the act of January 23, 1829, relating to Wills etc. (Rev. Laws of 1833, p. 653), unless the language of section 135 of the last named act means that such trial in that

Circuit Court shall be *de novo*. Section 10 of chapter 85 of the Revised Statutes of 1845, entitled "Probate Court," provided for submitting the proceedings of the probate justices of the peace in the exercise of judicial powers to the Circuit Court for its approval or rejection. Section 3 of the Act of April 5, 1872, concerning County Courts, allowed appeals and writs of error from final judgments of the County Court to the Circuit Court to be taken as appeals and writs of error from the Circuit Court to the Supreme Court, with certain changes in detail. That act was repealed in 1874. But these acts were so framed as to show plainly that the Circuit Court was not to try the case *de novo*, but was only to review the record of the court below; and said acts of 1829 and 1872 provided for bills of exceptions to be taken in the lower court and transmitted to the Circuit Court. The statute before us contains nothing restricting the appeal to a review of the proceedings of the board, or providing any means whereby the evidence heard by it can be preserved for review.

We think it a just conclusion from the foregoing principles and authorities that the mere fact that this statute grants an appeal to the Circuit Court, without specially providing that the trial shall be *de novo*, does not mean that a mere review of the record of the lower tribunal was intended. We think it obvious the act does not intend that the evidence shall be sent up to the Circuit Court and there be reviewed. The act does not require the board to take down the evidence in writing nor to preserve the same. It does not direct that the evidence heard by the board shall be made a matter of record or transmitted to the Circuit Court on appeal. It does not require or authorize the board or any member of it to certify to a transcript of the testimony, or to certify what testimony the board heard against the objection of the appealing party, or what testimony offered by the appealing party, the board refused to hear. The act does not authorize the Circuit Court, upon finding that material testimony has been rejected or incompetent testimony heard by the board, to remand the cause

1:05-cv-01073-MMM-JAG    # 19    Page 4 of 7

to the board with directions what testimony to receive or reject. Our attention is not called to a single word in the act looking towards the preparation and transmission of such a record as would enable the Circuit Court to review the decision of the board upon the facts. To hold that it means that, would be in effect judicial legislation. If all it was intended was to enable the Circuit Court to determine whether the record kept by the board in the matter in controversy is in proper form, an appeal was unnecessary. A common-law writ of certiorari would have furnished that remedy. We are of opinion that when this statute granted an appeal without requiring the evidence to be preserved and transmitted some greater remedy was intended, and that must have been a retrial of the charges. Whether it is wise to give a deposed police officer a retrial in the Circuit Court and to subject the conclusions of the board as to what is sufficient cause for removal to the judgment of the Circuit Court, are considerations for the legislature. Both board and court must, however, determine the case upon the same established principles hereinafter discussed. Neither board nor court can act from mere caprice. It is true that in City of Chicago v. People, 210 Ill. 84, the court, in a mandamus proceeding, held that the action of the civil service commission, discharging an officer after a lawful trial before the proper board, is final, and not reviewable by the courts. But that decision was under the Civil Service Act of 1895, which does not provide for an appeal. All that is there held is that that particular statute does not intend that the action of the commission shall be subject to review. That decision is not applicable to a statute which expressly grants the party affected by the order an appeal therefrom to the Circuit Court. We are therefore of opinion that the absence of the evidence from the transcript did not authorize the reversal of the order of removal.

But it does not follow that the judgment is erroneous because the reason assigned therefor is that the clerk's record is unsound. Appellee contends that there were no

such written charges preferred against him before the board as authorized that body to put him on trial and remove him. That question deserves consideration. It is not the intention of this statute that removals shall be at the mere pleasure of the board. The removal can only be for cause set forth in written charges against the officer, after he has had an opportunity to be heard, and after the board has investigated the charges and heard oral and documentary proof, including witnesses brought in by subpœna, and has found him guilty. The party aggrieved by the decision of the board is not restricted to a remedy by common-law writ of certiorari to review merely the record of the board, but that statute allows him an appeal to the Circuit Court, with its usual accompaniment of a retrial. Obviously the Circuit Court must be governed by the same considerations which ought to control the board. Where the statute permits the removal of an officer only for cause, after a hearing, the proceeding must be based upon specific charges, sufficient in their nature to warrant a removal; and they must be proved, unless their truth is admitted. The statute does not mean that if any charge, however frivolous or unimportant, is preferred and proven against an officer, he may then be removed. The charge, in order either to put the officer on trial or to justify his removal, must set forth some dereliction or neglect of duty, or an incapacity affecting his general character and his fitness for the office. The cause assigned must be personal to himself and imply an unfitness for the place. Throop on Public Officers, sections 266, 279; Mechem on Public Officers, sections 457, 458; Commonwealth v. Arnold, 3 Litt. (Ky.) 310. When charges are preferred against an officer, the board must necessarily decide whether they are sufficient to justify the board in investigating them—that is, whether they are such that if proved they require or justify the removal or suspension of the officer. When the case reaches the Circuit Court on appeal, that tribunal must then become the judge of the sufficiency of the charges as well as of the sufficiency

of the proof to sustain them. Mechem on Public Officers, section 450. In Andrews v. King, 77 Me. 224, 234, it was held that the specifications of causes alleged in charges upon which it is sought to remove a municipal officer should be "formulated with such reasonable detail and precision as shall inform the people and the incumbent what dereliction is urged against him. The charges should be specifically stated with substantial certainty, though the technical nicety required in indictments is not necessary." Though the court ought to remember that such a board is likely to be unlearned in the law, and should view its records and proceedings with indulgence on that account, yet "in proceedings so summary, affecting the character of a citizen and the peace of the state, the proceedings and record should be reasonably regular and precise." Where the specific charge is insufficient to justify the removal, the officer is entitled to be restored by legal proceedings. Dillon on Municipal Corporations, 4th Ed., "section 255." Lindblom v. Doherty, 102 Ill. App. 14. Where charges are required, the officer cannot be removed except for an offense particularly stated in the charges. Throop on Public Officers, section 383.

The charges upon which the board certifies it tried and removed Compton were contained in a letter signed by Mrs. C. B. Lyons and addressed to "Mr. Crowell," and it is set out in the board's transcript. Whether Crowell was a member of the board the record does not disclose, but the letter reached the board. The body of the letter is as follows: "On Sunday night, Aug. 9, officer Compton was called to the corner of 9th St. and Railroad Avenue, to stop some young men from making noise, and instead of making peace he made trouble. He called me a pretty tuff name for any one to call a lady, and the statement made in Rockford Republic, Tuesday eve, is correct, and this is not the first time he has showed himself in an offensive way to me. This letter does not state what the officer did or said, of which the writer complains. The conduct which Mrs. Lyons described as making trouble may have been only

proper discharge of the officer's duty in quelling a neighborhood disturbance. That which she considers a tough name might receive a different interpretation by impartial judges. Compton could not be sent to the columns of a newspaper to learn the charges against him. This letter did not charge any specific acts of misconduct against the officer. Under the principles stated above we are of opinion that this letter did not give the board jurisdiction to try Compton and to remove him from office. Therefore the court properly reversed the order of the board and adjudged it null and void. Its judgment should, therefore, be affirmed, notwithstanding that the judgment record, undertaking to recite the reasons which moved the court, gave another, and, as we think, insufficient reason.

It is assigned for error that the judgment is indefinite, in that it does not state what order of the board is reversed. While the judgment should have been more precise, yet when the entire order above quoted is read, it is clear that it is the order of the board of fire and police commissioners of the city of Rockford appearing in the transcript filed by said board in that cause, and from which Henry Compton appealed, which is reversed. The appeal bond of Compton describes him as a member of the police department of the city of Rockford as patrolman, and recites an appeal from an order of the board, entered November 25, 1903, finding him guilty of charges made by Mrs. C. B. Lyons, and removing and discharging him from service as patrolman. The transcript filed by the board shows an order on November 25, 1903, as follows: "The board decided that, in their opinion, the charges made by Mrs. C. B. Lyons were sustained, and that said patrolman, Henry Compton, be and hereby is removed from the police force of the city of Rockford." That is the order which the court reversed. The judgment is not so indefinite as to require its reversal.

It is assigned for error that the court refused to permit the board to take the evidence and send in a record of the same as an amendment to its transcript. This refers

to something not embodied in the record before us. The record does not show any such application to the court, or any action by the court on that subject or any exception thereto. If such an application had been made, the court should have refused it, both because the trial on such an appeal is *de novo*, and also because the board could not reconvene and take evidence to support the charges after the cause had been removed to the Circuit Court by appeal. Its authority to act was suspended by the appeal.

An assignment of error questions the act of the court "in entering a final order which gives effect to a law which is unconstitutional." If this record presents a constitutional question the appeal should have been to the Supreme Court, and it is our duty to dismiss the appeal to this court.

Appellant does not mean that the act under which it organized the board and tried and removed Compton is unconstitutional. It is asserted by appellant that Compton was appointed a police officer before the act in question became a law, and it is implied rather than asserted that his term had expired, and it is alleged he was kept in office by virtue of section 12 of the act, which provides, among other things, that one who has been a policeman more than one year prior to the passage of the act, shall not be discharged or removed except for cause. It is argued this violates section 28 of article 4 of the constitution of 1870, which says: "No law shall be passed which shall operate to extend the term of any public officer after his election or appointment." There is nothing in the record before us upon which to base this assignment of error. This record does not disclose when Compton became a policeman of the city of Rockford. For aught that appears in this record he may have been appointed under the rules and examination provided for by the act in question. The record does not show that this or any constitutional question was raised in the court below or preserved for review. Therefore appellant cannot oust this court of jurisdiction to entertain its appeal, by this assignment of error, not based upon anything in the record.

The judgment is affirmed.

*Affirmed.*

**Christ Kugel, Jr., v. Edward McEnroe.**

Gen. No. 4,363.

1. PERSONAL PROPERTY—*right to return, and recover purchase price*. Where a horse is sold upon a warranty of soundness with the agreement to permit its return if there is a breach of such warranty, the right so to return and recover back the purchase price can be enforced.

Action commenced before justice of the peace. Appeal from the Circuit Court of Whiteside County; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the April term, 1904. Reversed and remanded. Opinion filed August 24, 1904.

JARVIS DINSMOOR, for appellant.

H. C. WARD, for appellee.

Mr. JUSTICE DIBELL delivered the opinion of the court.

Kugel bought a horse of McEnroe for $75 and paid $70 down and was to pay $5 the next Saturday. The next day Kugel asked McEnroe to take the horse back and return the $70. McEnroe refused. Kugel then took the horse back to McEnroe's barn and left him there, and McEnroe has the horse. Kugel then sued McEnroe before a justice to recover the $70. Defendant obtained a judgment against plaintiff for the unpaid $5. Plaintiff appealed to the Circuit Court. A jury trial there produced the same result. Plaintiff has appealed to this court from the judgment of the Circuit Court.

The bargain was made at defendant's barn one evening in April. Three witnesses testify for plaintiff that defendant warranted the horse sound, and told plaintiff if he was not sound or if he found a blemish on the horse, plaintiff could bring the horse back and get his money. While the three witnesses do not use exactly the same language, yet the substance is the same. No one denies that the contract authorized plaintiff to return the horse and receive his money back if the horse was found to be unsound. Defendant, in stating his version of the occurrences at the time the sale was made, did not include that statement,

RECEIVED
JUN 29 2006
SUPREME COURT CLERK